**Opinion issued December 15, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00208-CV

_____

**THE HONORABLE ERIC HAGSTETTE, HONORABLE JOSEPH LICATA, III, AND THE HONORABLE JIM WALLACE, Appellants**

**V.**

**STATE COMMISSION ON JUDICIAL CONDUCT, ERIC VINSON, CATHERINE N. WYLIE, DAVID C. HALL, RONALD E. BUNCH, DEMETRIUS K. BIVINS, DAVID M. RUSSELL, TRAMER J. WOYTEK, DARRICK L. MCGILL, SUJEETH B. DRAKSHARAM, RUBEN G. REYES, LEE GABRIEL, VALERIE ERTZ, AND FREDERICK TATE, Appellees**

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-33741**

---

## MEMORANDUM OPINION

Appellants, the Honorable Eric Hagstette, the Honorable Joseph Licata, III,

and the Honorable Jim Wallace (Magistrate Judges) seek a declaratory judgment that

the appellees, the State Commission on Judicial Conduct and its individual members[1] (collectively, the Commission) exceeded the scope of their authority in issuing a public admonition against the Magistrate Judges. The Commission filed a plea to the jurisdiction, which the trial court granted. In their sole appellate issue, the Magistrate Judges argue that the trial court had jurisdiction to declare the Commission's actions void because the Commission and its officials acted beyond their statutory authority. Because we conclude that the Magistrate Judges' pleadings affirmatively negated the trial court's subject-matter jurisdiction over the case, we affirm.

## Background

The Magistrate Judges are criminal law hearing officers appointed and authorized to assist elected criminal district court judges in Harris County. One of the duties of the Magistrate Judges is to preside over the initial hearing following a criminal defendant's arrest, at which the court is obligated to determine probable cause, set money bail, and, in appropriate cases, consider the release of an arrestee on a no-money-down personal bond. *See* TEX. CODE CRIM. PROC. art. 15.17 (setting

---

[1] The individual appellees are members of the Commission: Eric Vinson, Executive Director; Hon. Catherine N. Wylie, Chair; Hon. David C. Hall, Vice-Chair; Hon. Ronald E. Bunch, Secretary; Hon. Demetrius K. Bivins, Member; Hon. David M. Russell, Member; Hon. Tramer J. Woytek, Member; Hon. Darrick L. McGill, Member; Hon. Sujeeth B. Draksharam, Member; Hon. Ruben G. Reyes, Member; Hon. Lee Gabriel, Member; Hon. Valerie Ertz, Member; and Hon. Frederick Tate, Member.

out duties of arresting officer and magistrate). Theses initial hearings are referred to as "15.17 hearings," named for Texas Code of Criminal Procedure article 15.17 that governs the duties of a magistrate following an arrest. *See id.* The Magistrate Judges point out that some elected criminal judges "chose to reserve the decision on personal bond eligibility for themselves" and had instructed the Magistrate Judges to refer those applications to the elected judge of the assigned court. Therefore, some arrestees not released following a 15.17 hearing later appeared before the elected judge of the assigned court for a determination regarding release on a personal bond.

In May 2016, a civil rights group filed a class-action lawsuit against several Harris County judges challenging their bail practices (the O'Donnell Litigation). The Magistrate Judges were named defendants in the O'Donnell Litigation. The plaintiffs in the O'Donnell Litigation asserted, in relevant part, a claim under 42 U.S.C. § 1983, alleging that the County's system of setting bail for indigent misdemeanor arrestees violates Texas statutory and constitutional law as well as the Equal Protection and Due Process Clauses of the Fourteenth Amendment. *ODonnell v. Goodhart*, 900 F.3d 220, 222 (5th Cir. 2018).

In making these claims, the O'Donnell plaintiffs asserted that article 15.17 requires magistrates to "admit the person arrested to bail if allowed by law." TEX. CODE CRIM. PROC. art. 15.17(a). In making a bail determination, the magistrate must consider multiple factors, including the arrestee's ability to make bail. *See id.* art.

3

17.15 (providing rules for fixing amount of bail). Magistrates are also authorized to release certain arrestees "on personal bond without sureties or other security," *id.* art. 17.03(a), and "a magistrate shall release a defendant on personal bond unless good cause is shown otherwise" provided the enumerated statutory criteria are satisfied, *id.* art. 17.032(b). The plaintiffs in the O'Donnell Litigation asserted that, by refusing to consider release on personal bond and instead referring that issue to the assigned elected judge, the Magistrate Judges violated indigent arrestees' equal-protection and due-process rights by holding them in jail when similarly situated but wealthier arrestees were released on bail.

While the O'Donnell Litigation was still pending, on December 1, 2016, a state senator filed a disciplinary complaint with the Commission against some of the judges named in the O'Donnell Litigation, including the Magistrate Judges. The disciplinary complaint challenged the same actions that were the subject of the O'Donnell Litigation—bail setting practices.

The Commission investigated the complaint and notified the Magistrate Judges of its determination that public admonitions were appropriate. The Magistrate Judges exercised their right to have a full hearing before the Commission to challenge these tentative public admonitions. They appeared at a hearing before the Commission on December 7, 2017. Following this hearing, on January 10, 2018, the Commission issued a "Public Admonition and Order of Additional Education"

4

against each Magistrate Judge. These public admonitions were substantively identical. They contained findings of fact by the Commission that the Magistrate Judges' testimony at the hearing that they fully considered all statutory factors in assessing bail lacked credibility. The findings acknowledged the magistrates' testimony that the elected judges "did not permit Hearing Officers to grant personal bonds" during the relevant time period, and, until August 2016, "the County Criminal Court at Law' Judges historically had similar rules." The public admonition also contained findings of fact that the Magistrate Judges were at-will employees and were concerned they would lose their positions as hearing officers if they failed to comply with the directives of the elected criminal district court judges.

The public admonition further identified the "relevant standards" as including Code of Criminal Procedure article 17.15, setting out the factors that courts are required to consider in setting bail, and article 17.03, which provides that "a magistrate may, in the magistrate's discretion, release the defendant on personal bond without sureties or other security." *See id.* arts. 17.03(a), 17.15. The order also identified Judicial Canons 2A and 3B(2) as relevant standards. Canon 2A states: "A judge shall comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." TEX. CODE OF JUD. CONDUCT, Canon 2A. Canon 3B(2) provides: "A judge should be faithful to the law and shall maintain professional competence in it. A judge shall not be swayed

5

by partisan interests, public clamor, or fear of criticism." TEX. CODE OF JUD. CONDUCT, Canon 3B(2).

The public admonitions concluded:

> [The Magistrate Judges] failed to comply with the law, and failed to maintain competence in the law, by strictly following directives not to issue personal bonds to defendants per the instructions of the judges in whose court the underlying cases were assigned. In so doing, [the judges] violated [their] constitutional and statutory obligation to consider all legally available bonds, including personal recognizance bonds, for those individuals whose cases were assigned to courts who instructed [them] not to issue personal recognizance bonds.
>
> In weighing the facts and circumstances of this case, the Commission gave weight to the fact that, at least in part, [the Magistrate Judges'] conduct was motivated by direct instructions from individual judges who played a role in [their] continued employment. The Commission considered this a mitigating factor in reaching its determination in this case.
>
> Based on this conduct, the Commission concludes that [the Magistrate Judges'] actions constituted willful violations of Canons 2A and 3B(2) of the Texas Code of Judicial Conduct.

In addition to issuing the public admonitions, the Commission also required each Magistrate Judge to "obtain four hours of instruction with a mentor" in the "area of magistration and bond setting" in addition to regular continuing education requirements.

The Magistrate Judges each appealed these public admonitions to special courts of review to be appointed pursuant to the provisions of Government Code section 33.034. However, they dismissed these review proceedings before their final hearings could take place.

6

On May 18, 2018, the Magistrate Judges filed the underlying proceeding under the Civil Practice and Remedies Code chapter 37, the Uniform Declaratory Judgments Act (UDJA), seeking a declaration that the Commission and its officials acted without jurisdiction in issuing the public admonition against the Magistrate Judges. In their petition, the Magistrate Judges specifically asserted:

> There is no settled law prohibiting Plaintiffs from referring the personal bond decision to the assigned court for consideration the next business day. To reach this conclusion, the Commission interprets (or misinterprets) the law to reach its sanction. Because the Commission's sanction rests on its interpretation of the law, it is void.

Thus, the Magistrate Judges sought a judicial declaration that their public admonitions were void.

The Commission filed a plea to the jurisdiction, arguing that it and its individual members are entitled to sovereign immunity that had not been waived. The Commission further argued that the ultra vires exception did not apply here. Finally, the Commission argued that there is no right of review of its sanctions orders apart from the special court of review procedure set out in Government Code chapter 33.

The trial court granted the plea to the jurisdiction.[2] This appeal followed.

---

[2] The Honorable Randy Wilson granted the plea to the jurisdiction. When the Honorable Tonya Garrison replaced him on the bench, she likewise denied the motion to reconsider.

**Plea to the Jurisdiction**

In their sole issue on appeal, the Magistrate Judges argue that the trial court erred in granting the plea to the jurisdiction. They assert that the trial court had jurisdiction to declare the Commission's actions void because the Commission and its members acted beyond their statutory authority.

**A. Standard of Review**

We review de novo a trial court's ruling on a jurisdictional plea. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "The ultimate inquiry is whether the particular facts presented in the pleadings affirmatively demonstrate a claim within the trial court's subject-matter jurisdiction." *Crampton v. Farris*, 596 S.W.3d 267, 272 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (citing *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010), and *Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161, 170–71 (Tex. App.—Austin 2013, no pet.)); *see Miranda*, 133 S.W.3d at 226.

When reviewing a trial court's ruling on a challenge to its jurisdiction, we consider the plaintiff's pleadings and factual assertions, as well as any evidence relevant to the jurisdictional issue. *City of Elsa*, 325 S.W.3d at 625–26; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000); *Crampton*, 596 S.W.3d at 272. We construe pleadings liberally in favor of the plaintiff, look to the pleader's intent, and determine if the pleader has alleged facts affirmatively demonstrating the court's

jurisdiction. *City of Elsa*, 325 S.W.3d at 625; *Miranda*, 133 S.W.3d at 226; *Crampton*, 596 S.W.3d at 273. Allegations found in pleadings may affirmatively demonstrate or negate the court's jurisdiction. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009); *Crampton*, 596 S.W.3d at 273. "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Miranda*, 133 S.W.3d at 227; *Crampton*, 596 S.W.3d at 273.

## B.      The Commission's Immunity

The State Commission on Judicial Conduct is a constitutionally-created agency comprised of judges, attorneys, and citizens from the State of Texas. *See* TEX. CONST. art. V, § 1-a(2); TEX. GOV'T CODE § 33.002(a-1) ("The commission is an agency of the judicial branch of state government and administers judicial discipline."). As a state agency, the Commission is thus entitled to sovereign immunity. *See Miranda*, 133 S.W.3d at 224; *see also LMV-AL Ventures, LLC v. Tex. Dep't of Aging & Disability Servs.*, 520 S.W.3d 113, 120 (Tex. App.—Austin 2017, pet. denied) (recognizing, in administrative-agency context, that sovereign immunity generally deprives courts of subject-matter jurisdiction to review agency actions absent legislatively-granted right to judicial review). When a governmental entity challenges jurisdiction on immunity grounds, the plaintiff "must affirmatively

demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 927 (Tex. 2015).

The Magistrate Judges argue, in part, that sovereign immunity does not apply to claims for declaratory relief. The UDJA, however, "does not enlarge a trial court's jurisdiction, and a litigant's request for declaratory relief does not alter a suit's underlying nature." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009); *see City of Houston v. Williams*, 216 S.W.3d 827, 829 (Tex. 2007) ("[G]overnmental immunity does not spring into existence when a damages award is finally made; it shields governments from the costs of any litigation leading up to that goal."). The UDJA provides a limited waiver of immunity for suits challenging the validity of a statute or ordinance. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633–34 (Tex. 2010); *Heinrich*, 284 S.W.3d at 373 n.6 ("For claims challenging the validity of ordinances or statutes . . . the Declaratory Judgment Act requires that the relevant governmental entities be made parties, and thereby waives immunity."); *see also* TEX. CIV. PRAC. & REM. CODE § 37.006(b) ("In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.").

The UDJA's limited waiver does not apply here because the Magistrate Judges' petition does not challenge the validity of a statute or ordinance. Rather, they sought a declaration that the public admonitions are void because the Commission and its members exceeded the scope of their constitutional and statutory authority. We look to the pleadings themselves and relevant jurisdictional evidence to determine applicability of sovereign immunity and need not accept the legal theories asserted as valid. *See City of Elsa*, 325 S.W.3d at 625–26; *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555; *see also Williams*, 216 S.W.3d at 828–29 (holding that private party may not "circumvent the State's sovereign immunity from suit" by mischaracterizing its claim as suit for declaratory judgment).

Furthermore, a plaintiff cannot use the UDJA to recharacterize a claim that should have been pursued through different channels. *Cf. Patel v. Tex. Dep't of Licensing and Reg.*, 469 S.W.3d 69, 79 (Tex. 2015). "Under the redundant remedies doctrine, courts will not entertain an action brought under the UDJA when the same claim could be pursued through different channels." *Id.* (citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 200 (Tex. 2007)). "The focus of the doctrine is on the initiation of the case, that is, whether the Legislature created a statutory waiver of sovereign immunity that permits the parties to raise their claims through some avenue other than the UDJA." *Id.*; *see Alamo Express, Inc. v. Union City Transfer*, 309 S.W.2d 815, 827 (Tex. 1958) (holding that "an action for

11

declaratory judgment does not lie" in suit that asserts "a direct attack upon the [agency's] order by appeal"); *Aaron Rents, Inc. v. Travis Cent. Appraisal Dist.*, 212 S.W.3d 665, 669 (Tex. App.—Austin 2006, no pet.) (en banc) ("When a statute provides an avenue for attacking an agency order, a declaratory judgment action will not lie to provide redundant remedies.").

Here, the Texas Constitution and the Government Code provides the Commission with authority to administer judicial discipline—including issuing public admonitions—and they provide an avenue for the Magistrate Judges to pursue review of to the challenged public admonitions. The Texas Constitution provides that, "[o]n the filing of a sworn complaint charging a person holding [judicial] office with willful or persistent violation of rules promulgated by the Supreme Court of Texas" or other "incompetence in performing the duties of the office," the Commission, "after giving the person notice and an opportunity to appear and be heard before the Commission, may recommend to the Supreme Court the suspension of such person from office" or take other such action as it may determine is appropriate. TEX. CONST. art. 5, §1-a(6)(A). The Constitution further provides, for example, that "[a]fter such investigation as it deems necessary, the Commission may in its discretion issue a private or public admonition, warning, reprimand, or requirement that the person obtain additional training or education. . . ." *Id.* art. 5, §1-a(8). The Constitution further granted the legislature authority to "promulgate

12

laws in furtherance of this Section [creating the Commission and outlining its duties]." *Id.* art. 5, §1-a(14).

Accordingly, Government Code chapter 33 governs the Commission and its investigation of complaints against members of the judiciary. *See* TEX. GOV'T CODE §§ 33.001–.051. Section 33.006 provides "absolute and unqualified" immunity from liability for acts by the Commission, its members and employees, or its executive director committed within the scope of official duties. *Id.* § 33.006. Section 33.022 contains provisions governing investigations and formal proceedings before the Commission, beginning with the Commission's ability to conduct a preliminary investigation of a complaint to determine whether the complaint is unfounded or frivolous and permitting further investigation if warranted. *Id.* § 33.022. Once a complaint is disposed of, the Commission is to promptly notify the complainant of the outcome, whether the complaint is dismissed, formal proceedings are instituted, or a private or public sanction is issued. *Id.* § 33.033(a), (b).

Importantly, a judge who is sanctioned by the Commission is entitled to de novo review of the Commission's decision by a special court of review made up of three court of appeals justices appointed by the chief justice of the supreme court. *Id.* § 33.034(a)-(e). The special court of review's "decision under this section is not appealable." *Id.* § 33.034(i).

Given these statutory provisions permitting the Magistrate Judges to raise their claim through some avenue other than the UDJA, we determine that the district court lacked subject-matter jurisdiction over the Magistrate Judges' suit seeking a declaration that the Commission's public admonitions were void. *See id.* § 33.034; *Patel*, 469 S.W.3d at 79 ("[C]ourts will not entertain an action brought under the UDJA when the same claim could be pursued through different channels."); *see also Aaron Rents, Inc.*, 212 S.W.3d at 669 ("When a statute provides an avenue for attacking an agency order, a declaratory judgment action will not lie to provide redundant remedies.").

## C.     Ultra Vires Claims

The Magistrate Judges argue that they are challenging whether "the Commission had the authority to act in the first place—not the 'correctness' of the Commission's decision." The Magistrate Judges assert that "well-settled authority dictates that a district court has subject matter jurisdiction to consider whether a state agency, such as the Commission, exceeded the scope of its authority." They alleged in their pleadings below that the Commission exceeded the scope of its statutory authority by interpreting unsettled law, rather than applying settled law, in issuing a public admonition against them. They assert that "this allegation establishes the district court's jurisdiction," citing *City of Sherman v. Pub. Util. Comm'n of Tex.*, 643 S.W.2d 681 (Tex. 1983) and *MHCB (USA) Leasing & Fin. Corp. v. Galveston*

14

*Cent. App. Dist. Review Bd.*, 249 S.W.3d 68 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

The Supreme Court of Texas in the *City of Sherman* set out the general rule that "judicial review of administrative orders is not available unless all administrative remedies have been pursued to the fullest extent." 643 S.W.2d at 683. It went on to observe, however, that "intervention by the court in administrative proceedings may be permissible when an agency is exercising authority beyond its statutorily conferred powers." *Id.* (concluding that court had jurisdiction to consider claim that Public Utility Commission had no statutory authority to regulate operations or services of municipally owned utilities) (quoting *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978)). In *City of El Paso v. Heinrich*, the supreme court further clarified that "suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity. . . ." 284 S.W.3d at 372. The court held that for the "ultra vires" exception to state actors' sovereign immunity to apply, a suit "must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.*

The supreme court further clarified that "as a technical matter, the governmental entities themselves—as opposed to their officers in their official capacity—remain immune from suit." *Id.* at 372–73. It held:

> [B]ecause the rule that ultra vires suits are not "suit[s] against the State within the rule of immunity of the State from suit" derives from the premise that the "acts of officials which are not lawfully authorized are not acts of the State," it follows that these suits cannot be brought against the state, which retains immunity, but must be brought against the state actors in their official capacity. This is true even though the suit is, for all practical purposes, against the state.

*Id.* at 373 (internal citations omitted). Thus, the ultra vires exception does not extend to the Magistrate Judges' claims against the Commission itself. *See id.*

As to the Magistrate Judges' claims against the individual members of the Commission in their official capacities, we observe that they have not pled any actions taken by the individual members of the Commission outside the scope of their duties. *See id.*; *Crampton*, 596 S.W.3d at 275; *Turner v. Robinson*, 534 S.W.3d 115, 126 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). A state officer acts without legal authority if he "exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Crampton*, 596 S.W.3d at 275; *Turner*, 534 S.W.3d at 126. The Magistrate Judges allege that the individual members of the Commission exceeded their statutory authority by construing the law, rather than applying established law, in deciding to issue public admonitions against them. However, these allegations complain of a government officer's exercise of discretion. *See*

*Heinrich*, 284 S.W.3d at 372. Nothing in the pleadings indicate that the individual members of the Commission acted without legal authority or failed to perform a purely ministerial act. *See id.*

The Magistrate Judges cite *State Commission on Judicial Conduct v. Gist*, No. 03-88-252-CV, 1990 WL 176008, at *5 (Tex. App.—Austin 1990) (case dismissed and opinion withdrawn, Dec. 12, 1990), for the proposition that the function of the Commission is one of fact finding, and, as such, it is to apply the facts to *determined law*, not to determine, construe, or interpret what the law should be. *See* TEX. GOV'T GODE § 33.001(b)(2) (defining "willful or persistent conduct that is clearly inconsistent with the proper performance of a judge's duties" as including "willful violation of a provision of the Texas penal statutes or the Code of Judicial Conduct"). We observe, however, that *Gist* is an unpublished opinion from 1990 that has no precedential authority and has since been withdrawn. No precedential authority supports the Magistrate Judges' contention that the Commission may not construe the law when necessary to carry out its constitutionally and statutorily conferred duties.

The Commission, as a state agency, may "exercise those powers granted by statute, together with those necessarily implied from the statutory authority conferred or duties imposed." *See San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 601 S.W.3d 616, 621 (Tex. 2020) (citing *City of Sherman*, 643 S.W.2d at 686).

The challenged actions of the Commission and its individual members fall within the specifically enumerated and necessarily implied constitutional and statutory grant of authority. The Commission investigated a complaint filed against the Magistrate Judges and ultimately issued a public admonition, as it is authorized to do. *See* TEX. CONST. art. 5, §1-a(8) (listing public admonitions as potential outcome of investigation into judicial wrongdoing); TEX. GOV'T CODE § 33.002 (providing that the Commission is judicial agency charged with administering judicial discipline). Fulfilling its duty to "administer[] judicial discipline" in this case necessarily implied authority to interpret the laws, such as Code of Criminal Procedure articles 17.03 and 17.15, and judicial Canons 2A and 3B(2), to determine whether discipline of the Magistrate Judges was appropriate. Even if the Commission or its individual members erred in exercising this discretion, we cannot say that such an error constitutes an ultra vires act. *See Honors Academy, Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018) ("'Ultra vires claims depend on the scope of the state official's authority,' not the quality of the official's decisions. Thus, it is not an ultra vires act for an official to make an erroneous decision within the authority granted.") (internal citations omitted); *MHCB (USA) Leasing & Fin. Corp.*, 249 S.W.3d at 81 ("[J]ust because an agency determination is wrongly decided does not render that decision outside the agency's authority . . . : an incorrect agency determination rendered *pursuant* to the agency's authority is not a

18

determination made *outside* that authority."). The Magistrate Judges' attempt to recharacterize their challenge to the Commission's public admonitions as a challenge to ultra vires acts are, thus, unavailing. *See Heinrich*, 284 S.W.3d at 369–73, 377–78 n.7 (looking to "nature of the liability sought to be imposed" to determine applicability of ultra vires exception).

We overrule the Magistrate Judges' sole issue on appeal.

## Conclusion

We affirm the judgment of the trial court.


Richard Hightower
Justice

Panel consists of Justices Keyes, Hightower, and Countiss.