# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00817-CV

**Appellants, Scott Freshour, Margaret McNeese, Timothy Webb, and Sherif Zaafran, M.D.,
in their Official Capacities as Officers of the Texas Medical Board//
Cross-Appellant, Robert W. Van Boven M.D., D.D.S.**

**v.**

**Appellee, Robert W. Van Boven M.D., D.D.S.//
Cross-Appellees, Amy Swanholm and Christopher Palazola,
in their Official Capacities as Officers of the Texas Medical Board**

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY,
NO. D-1-GN-17-005957, THE HONORABLE DUSTIN M. HOWELL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The dispute underlying this appeal arises from a disciplinary proceeding brought by the Texas Medical Board (the Board) against appellee Robert W. Van Boven, M.D., D.D.S. Although the proceeding resulted in a final order that dismissed the complaint against him, Dr. Van Boven filed suit against Scott Freshour, Margaret McNeese, Timothy Webb, Sherif Zaafran, Amy Swanholm, and Christopher Palazola (collectively, the Board Defendants), in their official capacities as officers of the Board, contending that they committed ultra vires acts when reporting the outcome of the proceeding to the National Practitioner Data Bank. The Board Defendants subsequently filed a plea to the jurisdiction asserting that Dr. Van Boven's claims were barred by sovereign immunity, which the court granted as to some of the Board Defendants

but denied as to others. This interlocutory appeal and cross-appeal followed. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). Because we conclude that Dr. Van Boven's claims are barred by sovereign immunity, we reverse that portion of trial court's order denying the plea to jurisdiction and affirm that portion of the order granting the plea to the jurisdiction.

## BACKGROUND

*Administrative Proceedings and Initial Report to the National Practitioner Data Bank*

In 2015, the Texas Medical Board received two separate complaints from patients of Dr. Van Boven alleging that he had engaged in inappropriate conduct while performing a medical examination. Following an expedited hearing, a three-member disciplinary panel from the Board placed a temporary restriction on Dr. Van Boven's license to practice medicine in Texas. *See* Tex. Occ. Code § 164.059(b) (temporary suspension or restriction of license). The restriction prohibited Dr. Van Boven from treating female patients, and the order imposing the restriction stated that it would "remain in effect until . . . superseded by a subsequent Order of the Board."

In March 2016, the Board reported the temporary restriction on Dr. Van Boven's license to the National Practitioner Data Bank (NPDB). Authorized by the Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101-52, and administered by the United States Department of Health and Human Services, the NPDB collects and maintains "information relating to the professional competence and conduct of physicians, dentists, and other health care practitioners."[1] *See* 45 C.F.R. § 60.1. In part, the Act seeks to prevent "incompetent physicians

---

[1] Although the Act does not expressly call for the creation of the NPDB, it does direct the Secretary to promulgate regulations providing for the reporting of physician information; the "disclosure of [reported] information, upon request to the physician or practitioner"; and

2

[from moving] State to State without disclosure or discovery of the physician's previous damaging or incompetent performance." *See* 42 U.S.C. § 11101(2). In furtherance of this objective, each state medical board is required to report to the NPDB whenever it "revokes or suspends (or otherwise restricts) a physician's license or censures, reprimands, or places on probation a physician, for reasons relating to the physician's professional competence or professional conduct." *Id*. § 11132*; see id.* § 11151(2) (defining "Board of Medical Examiners"). Information reported to the NPDB is considered confidential but may be provided, under limited circumstances, to other licensing boards, hospitals, and other healthcare entities. *See id.* § 11137(a), (b). Published guidance from the NPDB outlines four types of reports that a state medical board, in certain circumstances, should file with the NPDB: (1) an Initial-Adverse-Action Report; (2) a Revision-to-Action Report; (3) a Correction Report; and (4) a Void Report. *See id.* § 11134 (providing that information reported under Act "shall be reported regularly . . . and in such form and manner as the Secretary prescribes"); *see also id.* § 11137(c) (providing that "no person or entity . . . shall be held liable with respect to any report made . . . without knowledge of the falsity of the information contained in the report"). In this case, the Board reported the temporary restriction on Dr. Van Boven's license to the NPDB as an Initial-Adverse-Action Report.

The Board later filed a formal complaint against Dr. Van Boven with the State Office of Administrative Hearings (SOAH), and a four-day hearing on the complaint was held before an administrative law judge (ALJ). *See* Tex. Occ. Code § 164.005. On September 15, 2017, the ALJ issued a proposal for decision concluding that the Board "failed to prove, by

procedures in the case of disputed accuracy. *See* 42 U.S.C. §11136. Pursuant to this directive, the Secretary has promulgated regulations establishing the NPDB. 45 C.F.R. § 60.1.

3

preponderance of the evidence, that Dr. Van Boven [was] subject to sanction." On December 8, 2017, the Board issued a "Final Order" that adopted the ALJ's findings of fact and conclusions of law and stated, "This matter is hereby dismissed. . . . This Order supersedes the Order of Temporary Restriction issued on February 29, 2016, and [Dr. Van Boven's] license to practice medicine in Texas is no longer restricted." *See id.* § 164.007(a) (providing that after receiving ALJ's findings of fact and conclusions of law, "the board shall dispose of the contested case by issuing a final order based on the [ALJ's] findings of fact and conclusions of law"); *see also* 22 Tex. Admin. Code § 187.37(a), (b) (Texas Medical Board, Final Decisions and Orders,).

*Follow-up Report to the NPDB*

At the center of this dispute is the report made by the Board to the NPDB informing it of the Final Order.[2] *See* 45 C.F.R. § 60.6(b) (providing that entity "which reports information on licensure" "must also report any revision to the action originally reported"). The Board submitted its December 2017 report to the NPDB as a Revision-to-Action Report, and in the report stated:

> On December 8, 2017, the Board entered a Final Order regarding [Dr. Van Boven], dismissing the Board staff's complaint. The action was based on the findings of an [ALJ] at [SOAH]. This Order resolves a formal complaint filed at SOAH. The Order supersedes all previous orders.

The next day Dr. Van Boven informed the Board in writing that he disagreed with its decision to submit a Revision-to-Action Report and argued that the Board should have

---

[2] In his appellate brief, Dr. Van Boven complains, in part, that the Board "unilaterally issu[ed] a 'modified' order instead of a Decision." Without expressing any opinion on the merits of this argument, we will refer to the Board's action on the ALJ's proposal for decision as a "Final Order" because the document is titled as such in the appellate record.

4

submitted a Void Report instead. In his letter, Dr. Van Boven asserted that he had been completely exonerated by the ALJ's decision and by the Board's subsequent Final Order adopting that decision. Dr. Van Boven reasoned that, as a result of the decision, any record of the underlying disciplinary proceedings against him should be removed from his disclosable NPDB record—including any record of the Board's decision to temporarily restrict his license—which could only be accomplished by the submission of a Void Report.

The Board responded to Dr. Van Boven's written complaint and informed him it disagreed with his assertion that it should have submitted a Void Report and not a Revision-to-Action Report. The Board explained in a letter to Dr. Van Boven that the NPDB's rules and published guidance require it to submit a Revision-to-Action Report any time it "modifies an adverse action previously reported" to the NPDB and that, in this case, the Board's Final Order modified the previously reported temporary restriction on his license.

Dr. Van Boven also contacted the NPDB about the Board's failure to submit a Void Report, invoking the NPDB's dispute resolution process. Upon reviewing materials and arguments submitted by the parties, the NPDB notified the Board that "there is a field in the Report that requires a correction." Specifically, the NPDB recommended that the Board reword its description of the action taken and "allow the narrative to reflect the complete record." In short, the NPDB recommended that the Board modify its Revision-to-Action Report to more accurately reflect that the Final Order states that the ALJ found that Board staff had failed to prove the allegations raised by the patients; that the ALJ concluded that the Board staff had failed to prove that Dr. Van Boven was subject to sanctions; and that the Board adopted all of the ALJ's findings of fact and conclusions of law. The NPDB also directed the Board to include in its corrected Report: "The matter regarding Dr. Van Boven was dismissed and the

5

December 8, 2017 Final Order superseded the February 29, 2016 Order of Temporary Restriction and Dr. Van Boven's license to practice medicine in Texas is no longer restricted." The Board subsequently submitted a corrected Revision-to-Action Report, following the NPDB's recommendation.

In April 2018, the NPDB issued its "Dispute Resolution Decision" based on the Revision-to-Action Report as corrected. In its written decision, the NPDB rejected Dr. Van Boven's argument that the Board had failed to comply with NPDB-reporting requirements when it filed a Revision-to-Action Report and not a Void Report. According to the NPDB's decision, a Void Report "is appropriate when an action is overturned or vacated" and effectively acts as a "withdrawal of a report in its entirety." In contrast, when a final action is taken that "modifies an adverse action previously reported to the NPDB," a reporting medical board should file a Revision-to-Action Report. Relying on the language of the Final Order, the NPDB concluded that it "was the intention of the Board to modify the restriction on [Dr. Van Boven's] license, not overturn or vacate the [temporary restriction order] all together," and that "[p]ursuant to the regulations that govern the NPDB, the Board was legally required to file the Revision to Action Report." In reaching this conclusion, the NPDB emphasized that it could not substitute its judgment for that of the Board, that it was the Board's "intention and authority to modify the Initial Order based on a decision of SOAH by reinstating [Dr. Van Boven's] license," and that the "NPDB dispute process is not a mechanism to appeal the Board's decision."

*Subsequent State Lawsuit*

Unsatisfied with Board's response to his complaint to the Revision-to-Action Report and with the NPDB's decision, Dr. Van Boven amended his previously filed suit in

district court to seek a declaratory judgment that the Final Order "constitutes an overturning of its Initial Action/Order" and that the Board was required to submit a Void Report to the NPDB.[3] Dr. Van Boven also requested mandamus and injunctive relief that would require the Board Defendants to withdraw the Revision-to-Action Report and to submit a Void Report. In response, the Board Defendants filed a plea to the jurisdiction asserting that Dr. Van Boven's suit was barred by sovereign immunity. In response to the plea, Dr. Van Boven alleged that his suit was not barred by sovereign immunity because his claims are based on the Board Defendants' ultra vires acts, a recognized exception to immunity.

Following a hearing, the trial court denied Dr. Van Boven's request for a temporary injunction, granted the defendants' plea to the jurisdiction with respect to two defendants (Palazola and Swanholm), and denied the defendants' plea to the jurisdiction with respect to the other four defendants. Those four defendants (Freshour, McNeese, Webb, and Zaafran) now appeal from the trial court's denial of their plea to the jurisdiction.[4] Dr. Van Boven cross-appeals from the court's grant of the plea to the jurisdiction with respect to the two

---

[3] On October 25, 2017, after the ALJ issued his proposal for decision but before the Board issued its Final Order, Dr. Van Boven filed this suit in district court, representing himself pro se. In his original petition, Dr. Van Boven sought "emergency relief by declaration of the Court to nullify a Temporary Restriction void of authority of Administrative law by the Board."

[4] According to Dr. Van Boven's live pleadings, Freshour "is the General Counsel and former Interim Executive Director of the Texas Medical Board"; McNeese "is a member of the Executive Committee" and "Chair of the [Board] Disciplinary Process Review Committee"; Webb "is the Chair of the Licensure Committee of the [Board]" and "a member of the Executive Committee of the [Board]"; and Zaafran "is the President of the [Board]" and "a member of the Executive Committee of the [Board]."

other defendants (Swanholm and Palazola).[5]  Dr. Van Boven also cross-appeals from the trial court's denial of his request for a temporary injunction.

Because subject-matter jurisdiction is a threshold issue, we first consider the trial court's rulings on the Board Defendants' plea to the jurisdiction.  *See Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016) (noting that immunity implicates subject-matter jurisdiction and, therefore, is "properly asserted in a plea to the jurisdiction").

## DISCUSSION

*Standard of Review*

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction.  *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004).  The burden is on the plaintiff to plead or present evidence of facts that affirmatively demonstrate a trial court's subject-matter jurisdiction.  *See Heckman v. Williamson County*, 369 S.W.3d 137, 149-50 (Tex. 2012).  Because subject-matter jurisdiction is a question of law, we review a trial court's ruling on a plea to the jurisdiction de novo.  *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).  In conducting this review, we begin with the plaintiff's live pleadings and determine whether the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause.  *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012).  We look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true.  *Miranda*, 133 S.W.3d at 227.

In addition, we may consider relevant evidence submitted by the parties and must do so when necessary to resolve the jurisdictional issues raised.[6]  *Bland Indep. Sch. Dist. v. Blue*,

---

[5]  According to Dr. Van Boven's live pleadings, Swanholm is "an Assistant General Counsel for the [Board]" and Palazola is "the litigation manager for the [Board]."

8

34 S.W.3d 547, 555 (Tex. 2000). "Our ultimate inquiry is whether the particular facts presented, as determined by the foregoing review of the pleadings and any evidence, affirmatively demonstrate a claim within the trial court's subject-matter jurisdiction." *Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 171 (Tex. App.—Austin 2013, no pet.).

*Sovereign Immunity and Ultra Vires*

Sovereign immunity "shield[s] the public from the costs and consequences of improvident actions of their governments," and as a result, generally protects officials from liability for erroneous decisions and mistakes. *Tooke v. City of Mexia*, 197 S.W.3d 325, 331-32 (Tex. 2006). Absent legislative waiver, sovereign immunity deprives Texas courts of subject-matter jurisdiction over suits against the State or its agencies or subdivisions. *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620-21 (Tex. 2011). As a result, "there is no general right to challenge or seek review of a state agency order or decision in Texas state court," *Bacon*, 411 S.W.3d at 171, and legislative waivers of immunity must be clear and unambiguous, *LMV-AL Ventures, LLC v. Texas Dep't of Aging & Disability Servs.*, 520 S.W.3d 113, 120 (Tex. App.—Austin 2017, pet. denied).

"[I]n certain narrow instances, a suit against a state official can proceed even in the absence of a waiver of immunity if the official's actions are *ultra vires*." *Hall v. McRaven*,

---

[6] When the jurisdictional issues overlap with the merits of the plaintiff's claims, the party asserting the plea to the jurisdiction must overcome a traditional-summary-judgment-like burden of proof. *Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 171 (Tex. App.—Austin 2013, no pet.); *University of Tex. v. Poindexter*, 306 S.W.3d 798, 806-07 (Tex. App.—Austin 2009, no pet.). Under this standard, we consider whether the evidence in the record raises a fact issue, and if it does, the jurisdictional issue must be resolved by the trier of fact. *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). Conversely, the trial court must rule on the plea as a matter of law if the evidence is undisputed or fails to raise a fact issue. *Miranda*, 133 S.W.3d at 228.

508 S.W.3d 232, 238 (Tex. 2017). Under what is often referred to as the "ultra vires exception" to sovereign immunity, a claimant may file suit to compel a government official "to comply with statutory or constitutional provisions" through prospective injunctive or declaratory relief. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Properly pleaded ultra vires suits do not implicate sovereign immunity because they do not attempt to exert control over the state but, instead, attempt to reassert control of the state over one of its agents. *Id.* Consequently, ultra vires claimants are limited to prospective declaratory or injunctive relief restraining ultra vires conduct, and monetary claims are generally barred. *Id.* at 374-77.

To fall within the ultra vires exception, the plaintiff must "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* at 372. "[M]inisterial acts" are those "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *McRaven,* 508 S.W.3d at 238. Conversely, discretionary acts are those that require the exercise of judgment and personal deliberation. *Southwestern Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015). While "immunity bars suits complaining of an exercise of absolute discretion," "a government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus ultra vires, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Houston Belt*, 487 S.W.3d at 158. "Conversely, if the plaintiff alleges only facts demonstrating acts within the officer's legal authority and discretion, the claim seeks to control state action, and is barred by sovereign immunity." *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality,* 307 S.W.3d 505, 515-16 (Tex. App.—Austin 2010, no pet.). "[M]erely asserting legal conclusions or labeling a defendant's actions as 'ultra vires,' 'illegal,' or 'unconstitutional' does not suffice to

10

plead an ultra vires claim—what matters is whether the *facts* alleged constitute actions beyond the governmental actor's statutory authority, properly construed." *Texas Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 702 (Tex. App.—Austin 2011, no pet.).

*Analysis*

On appeal, the Board Defendants argue that the trial court erred in denying their plea to the jurisdiction because the pleadings and evidence fail to show that the Board Defendants committed an ultra vires act. In response to the plea to the jurisdiction, and now on appeal, Dr. Van Boven contends, in part, that his suit alleges that the Board Defendants committed ultra vires acts when they "failed to perform their ministerial task of submitting a Void Report to the [NPDB] and thereby informing the medical community and the public that the temporary sanction imposed against Dr. Van Boven has been voided by the [Board's] Final Order." Dr. Van Boven emphasizes that the NPDB's published guidance provides that a Void Report is appropriate when an "action [is] overturned on appeal" and that, in his view, the plain language and legal effect of the Board's Final Order is that the temporary restriction previously imposed by the three-member panel was overturned on appeal by the ALJ.

Conversely, the Board Defendants argue that the Board did not have a ministerial duty to submit a Void Report following the issuance of the Final Order and point to NPDB's published guidance—in particular, the following statement:

> **Summary or Emergency Suspension and Other Nonfinal Actions**
>
> The requirements for reporting State licensure and certification actions are not limited to final actions. Interim and nonfinal adverse actions taken by a State licensing or certification authority also must be reported to the NPDB. Examples of such actions include a State's summary or emergency suspension of a license. . . . Once a final action is taken that supersedes or modifies the initial action, the

11

State licensing or certification authority must submit a Revision-to-Action Report.

The Board Defendants reason that the Final Order only superseded or modified Dr. Van Boven's previously ordered temporary suspension and that under the NPDB's published guidance, the term "overturned on appeal" is limited to situations where an action is overturned by a judicial decision, which did not occur here.

The parties dedicate much of their appellate briefing to the issue of whether the Board's decision to submit a Revision-to-Action Report was a correct decision and in accordance with NPDB rules and published guidance. However, the fact that Dr. Van Boven disagrees with the Board's interpretation of NPDB rules and published guidance does not mean that the Board acted ultra vires in applying that interpretation. *See LMV-AL Ventures*, 520 S.W.3d at 126. A cognizable ultra vires claim must challenge the government official's authority to decide, not whether the official made an incorrect decision. *Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018) ("'Ultra vires claims depend on the scope of the state official's authority,' not the quality of the official's decision." (quoting *McRaven*, 508 S.W.3d at 238)). "It is not an ultra vires act for an official to make an erroneous decision within the authority granted." *Id.* at 68; *see Houston Belt*, 487 S.W.3d at 158 ("[W]hether a suit attacking an exercise of limited discretion will be barred is dependent upon the grant of authority at issue in any particular case."). Therefore, we begin our analysis of Dr. Van Boven's claims by determining the scope of the Board's authority as it relates to NPDB-reporting requirements. That is, we examine what discretion, if any, the Board Defendants had to report to the NPDB the Final Order dismissing the Board's disciplinary action against Dr. Van Boven by filing a Revision-to-Action Report.

12

The issue presented here is similar to that presented in *Hall v. McRaven*, 508 S.W.3d at 234-42. In *McRaven*, a regent for the University of Texas System sued Chancellor William McRaven for refusing to grant the regent access to records containing student-admissions information. *Id.* at 234. McRaven asserted that the records were protected from disclosure under the Family Educational Rights and Privacy Act (FERPA). *Id.* at 236; *see generally* 20 U.S.C. § 1232g (FERPA). On appeal, the Texas Supreme Court considered, in part, "whether McRaven's alleged misinterpretation of [FERPA] constitute[d] *an ultra vires* act." *McRaven*, 508 S.W.3d at 240-41. The Supreme Court began its jurisdictional analysis by examining the scope of McRaven's enabling authority, which the court emphasized was supplied by a rule adopted by the Regents and not by FERPA—a federal law "collateral to McRaven's authority." *Id.* at 242. This rule stated that "the Chancellor, in consultation with the U.T. System General Counsel, shall determine whether State or federal law restricts compliance with the request [and] shall determine whether a Regent may review information that is protected by [FERPA]." *Id.* at 236. Based on this broad and otherwise unconstrained authority, the court concluded that Hall's complaint regarding McRaven's exercise of his discretion to interpret and apply FERPA failed to establish a valid ultra vires claim. *Id.* at 243. "When the ultimate and unrestrained objective of an official's duty is to interpret collateral law, a misinterpretation is not overstepping such authority; it is a compliant action even if ultimately erroneous." *Id.* at 242.

Here, in Chapter 164 of the Occupations Code, the Legislature has granted the Board the exclusive authority to discipline medical license holders and has set the parameters of that authority. *See* Tex. Occ. Code §§ 164.001-.206. In part, the Occupations Code requires that the Board report any disciplinary action taken against a physician to "the United States Secretary of Health and Human Services." *Id.* § 164.060. The Code does not place any ministerial duty on

13

the Board with respect to what or how it must report to the NPDB—only that it must report "any disciplinary action," which the undisputed facts show that the Board did here. Similarly, the Legislature has not imposed any express limitation on the Board's authority to report to the NPDB and has not placed any constraint on the Board in determining how and what information it must report. Effectively, the Legislature has tasked the Board with interpreting and applying federal law in carrying out its statutory duty to report disciplinary actions to the NPDB.[7] Therefore, we conclude that the Board did not have a ministerial duty to submit a Void Report to the NPDB under its enabling authority, and to the extent Dr. Van Boven complains that the Board exceeded its legal authority by misinterpreting and misapplying collateral federal law (namely, the Health Care Quality Improvement Act, NPDB rules, and NPDB published guidance), he has failed to allege a valid ultra vires claim. *See McRaven*, 508 S.W.3d at 242.

On appeal, Dr. Van Boven argues that *McRaven* is not dispositive of his suit because his ultra vires claims are based on more than just allegations that the Board failed to comply with a ministerial duty under NPDB rules and guidance to submit a Void Report. Although not entirely clear from his pleadings before the trial court, Dr. Van Boven characterizes his challenge as including a complaint that the Board's treatment and representation of the ALJ's decision, and its Final Order adopting that decision, as a "reinstatement" of his license or "modification" of the restriction on his license conflicts "with state law and Board Rules." Liberally construing Dr. Van Boven's pleadings, including his briefing to this Court, we interpret his claim to be that (1) there is no legal authority under state law that would allow the Board to

---

[7] Similarly, by rule, the Board has provided that it "will report a disciplinary action to the NPDB according to applicable federal rules and statutes." 22 Tex. Admin. Code § 187.5 (Texas Medical Board, National Practitioner Data Bank (NPDB)).

14

construe the Final Order as a "reinstatement" or "modification" of Dr. Van Boven's previously restricted license, and (2) by doing so, the Board Defendants have effectively imposed an adverse or negative sanction on Dr. Van Boven, despite the fact that the Board has no authority to impose a sanction without an express finding that he committed a punishable violation.[8] *See, e.g.*, Tex. Occ. Code §§ 164.051 (ground for denial or disciplinary action), .052 (prohibited practices by physician or license applicant), .151-.154 (license reinstatement upon application); *but see id.* § 164.007(a-1) (stating that "the board has the sole authority and discretion to determine the appropriate action or sanction, and the administrative law judge may not make any recommendation regarding the appropriate action or sanction").

Based on the relief sought by Dr. Van Boven, we conclude that his allegations concerning the Board's treatment of the ALJ's decision and of the Board's Final Order fail to constitute a valid ultra vires claim. In Dr. Van Boven's view, the ALJ's decision is equivalent to a factual determination that Dr. Van Boven did *not* engage in any sanctionable conduct and that the temporary restriction should never have been placed on his license, i.e., an exoneration. Dr. Van Boven reasons that the Board Defendants' failure to treat the Final Order as anything short of an exoneration for purposes of NPDB reporting is ultra vires conduct. The only prospective relief sought by Dr. Van Boven, however, is an injunction and order requiring the Board to

---

[8] In his appellate brief, Dr. Van Boven asserts that "the most significant ultra vires act occurred when [the Board Defendants] converted a Board Final 'Decision' into a 'Modified' or 'Revised Disciplinary Order.'" Second, Dr. Van Boven argues that the Board Defendants committed an ultra vires act by "portraying the SOAH decision as a 'Reinstatement' of Dr. Van Boven's License or 'modified' Adverse Action/Disciplinary Order to the NPDB." Third, Dr. Van Boven complains that the Board Defendants "committed ultra vires acts by asserting that the Temporary Order imposed an adverse action or negative sanction on Dr. Van Boven despite the fact that in the end, Dr. Van Boven was not subject to any sanction."

15

submit a Void Report to the NPDB.[9]  Therefore, with respect to Dr. Van Boven's allegations concerning the Board's treatment of the Final Order as a "reinstatement" or "modification" of his license, the question is whether the Board's decision to submit a Revision-to-Action Report (and not a Void Report) conflicts with the Board's enabling authority.  *See McRaven*, 508 S.W.3d at 242 (noting that question was "whether McRaven's allegedly mistaken interpretation of collateral law was nevertheless in violation of his enabling authority").  Absent a clear limitation in the Occupations Code on the Board's authority to determine the legal effect of the Final Order *as it relates to NPDB reporting requirements*, we cannot conclude Dr. Van Boven has asserted a valid ultra vires claim based on the Board's decision to treat the Final Order as a "reinstatement." *Id.* (explaining that unlike defendant's determination in *Houston Belt*, which was "subject to explicit constraints," McRaven's "allegedly mistaken interpretation of collateral law" was not in violation of his enabling authority because no constraint was placed on his discretion to determine FERPA protections).  Dr. Van Boven has not cited, and we have not found, any such statutory constraint.

Finally, in his cross-appeal, Dr. Van Boven contends that the trial court erred in granting the plea to the jurisdiction with respect to two Board Defendants, Swanholm and Palazola, both of whom are staff attorneys for the Board but are not Board members or officers.

---

[9]  Dr. Van Boven also seeks a declaration that the Board's Final Order "constitutes an overturning of its Initial Action/Order based on internal challenge/appeal before SOAH and that the Defendants should have issued a Void Report rather than a Revised Report to the NPDB." Because this relief is not prospective in nature, it does not support Dr. Van Boven's ultra vires claim.  *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) (explaining that ultra vires claims are limited to prospective relief); *see also Delk v. Lehmberg*, No. 03-12-00678-CV, 2014 Tex. App. LEXIS 5033, at *2 (Tex. App.—Austin May 9, 2014, no pet.) (mem. op.) (concluding that "while a request for declaratory relief may support an ultra vires action," declaration that defendants violated the constitution in past was "purely retrospective in nature" and barred by sovereign immunity).

16

Dr. Van Boven argues in his cross-appellant's brief that his ultra vires suit includes allegations that Swanholm and Palazola engaged in a variety of ultra vires acts in their handling of the patient complaints and that these acts led to the hearing before the disciplinary panel and the temporary restriction placed on his license. *See* Tex. Occ. Code § 164.059. Similarly, in his appellant's brief, Dr. Van Boven also cites to a laundry list of actions taken by the other Board Defendants prior to the ALJ's decision that, in his view, constitute ultra vires acts in the investigation and prosecution of the claims in the underlying disciplinary proceedings against him. For example, Dr. Van Boven alleges that Board staff failed to investigate or refer allegations of unlawful bad-faith reporting; that Board staff falsely asserted that Dr. Van Boven met criteria demonstrating that he posed a "continuing threat to the public health and welfare"; that he was denied the right to present exculpatory evidence and to present photographic materials; and that staff engaged in "prosecutorial misconduct" and "witness tampering."

Not all of the allegations that Dr. Van Boven makes now concerning wrongdoing in the underlying disciplinary proceedings appear in his live pleadings, but even if they did and we were to accept them as true, we would conclude that they fail to constitute a cognizable ultra vires claim. These allegations relate to and question the validity of the temporary-restriction order, the ALJ's decision, and the Final Order. Dr. Van Boven does not seek any specific relief from these orders and decision, and he does not seek any relief from Swanholm or Palazola. Moreover, Dr. Van Boven does not explain, and we fail to see, what prospective equitable relief would be available in this suit based on these past acts. *See City of Arlington v. Randall*, 301 S.W.3d 896, 907 (Tex. App.—Fort Worth 2009, pet. denied) (explaining that city was immune from "a suit seeking imposition of an affirmative duty based on a past alleged actionable wrong") *disapproved of on other grounds by Texas Dep't of Aging and Disability Servs. v.*

17

*Cannon*, 453 S.W.3d 411 (Tex. 2015); *see also Heinrich*, 284 S.W.3d at 373-74 (explaining that even if ultra vires claim may be brought, "the remedy may implicate immunity").

Dr. Van Boven challenges the Board's decision to submit a Revision-to-Action report, contending not just that the decision was erroneous but that it was intentionally vindictive and damaging to his professional reputation. Nevertheless, his pleadings fail to show that it was outside the scope of the Board's authority to make such a decision, regardless of motive. We conclude that Dr. Van Boven has failed to plead a valid ultra vires claim and, in addition, that the facts pleaded affirmatively show that the trial court lacks subject-matter jurisdiction over Dr. Van Boven's suit. *See Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) (pleader should only be given opportunity to replead "if it is possible to cure the pleading defect"); *Creedmoor-Maha*, 307 S.W.3d at 526 (court should not allow party to replead if alleged facts affirmatively negate jurisdiction). The trial court erred to the extent it denied the Board Defendants' plea to the jurisdiction. Conversely, the trial court did not err to the extent it granted the Board Defendants' plea to the jurisdiction.[10]

## CONCLUSION

To the extent the trial court's order granted the plea to the jurisdiction to Swanholm and Palazola, we affirm the trial court's order. To the extent the trial court's order denied the plea to the jurisdiction as to the remaining Board Defendants, we reverse the order and render judgment dismissing Dr. Van Boven's claims against those defendants.

---

[10] Because we conclude that the trial court lacked subject-matter jurisdiction over Dr. Van Boven's suit, we need not decide whether the trial court erred in denying his request for temporary injunctive relief, the other issue raised in his cross-appeal. *See* Tex. R. App. P. 47.1.

18

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed in Part; Reversed and Rendered in Part

Filed:   January 9, 2020

19