**Affirmed and Memorandum Opinion filed May 12, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-20-00362-CV

## LAMAR ADVANTAGE OUTDOOR COMPANY, L.P., Appellant

### V.

## TEXAS DEPARTMENT OF TRANSPORTATION; JAMES M. BASS, IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE TEXAS DEPARTMENT OF TRANSPORTATION; AND GUS E. CANNON, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE RIGHT OF WAY DIVISION OF THE TEXAS DEPARTMENT OF TRANSPORTATION, Appellees

**On Appeal from the 353rd District Court**
**Travis County, Texas[1]**
**Trial Court Cause No. D-1-GN-17-001646**

## MEMORANDUM OPINION

---

[1] Under the Texas Rule of Appellate Procedure 41.3, this court must decide the appeal in accordance with the Third Court of Appeals's precedent under principles of stare decisis if this court's decision otherwise would have been inconsistent with the Third Court of Appeals's precedent. Tex. R. App. P. 41.3.

Appellant Lamar Advantage Outdoor Company, L.P. raises one issue in its appeal challenging the trial court's dismissal, granting the motion to dismiss for want of jurisdiction filed by appellee Texas Department of Transportation ("TxDOT") and two of its officials, appellees James M. Bass and Gus E. Cannon. Under its sole issue, Lamar asserts that it alleged proper waivers of sovereign immunity for three of its claims — its *ultra vires* claims against Bass and Cannon, its declaratory judgment claims under the Administrative Procedure Act ("APA") (implicating TxDOT's conduct), and its inverse condemnation claims against TxDOT for threatening unlawful regulatory action, and that they were therefore were erroneously dismissed for want of jurisdiction. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case is about outdoor sign regulation in Texas, and in particular TxDOT's regulation of three signs in Harrison County.

### *Statutory and Regulatory Background*

At the urging of a Harrison-County-born White House resident, the Federal Highway Beautification Act became law in 1965. The law aims to "protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty." 23 U.S.C. § 131(a). To that end, it seeks to control signs along the nation's highways. *Id*. The law requires that all states effectively control the erection and maintenance of outdoor advertising signs along U.S. highways. 23 U.S.C. § 131(a), (c). If a state fails to make provisions to effectively control such signs, it risks losing ten percent of its highway funds. *Id*. § 131(b).

To comply, Texas lawmakers enacted the Texas Highway Beautification Act. Tex. Transp. Code § 391.001 et seq. The Texas act declares that a

2

commercial sign erected in non-compliance with its provisions "endangers the health, safety, welfare, morals, and enjoyment of the traveling public and the protection of the public investment in the interstate and primary highway systems." *Id*. § 391.034(a)(1). A noncompliant sign also constitutes a "public nuisance." *Id*. § 391.034(a)(2).

Chapter 391 prohibits persons from erecting or maintaining commercial signs in regulated areas without first obtaining both a license and a permit from TxDOT. *See id*. §§ 391.061, .067; *see also id*. §§ 391.062–.064 (requirements for obtaining license), .066 (authorization to revoke or suspend licenses or place licensees on probation), .068 (requirements for obtaining permit).

The Act charges TxDOT with rulemaking power to implement chapter 391's provisions. *See id*. §§ 391.065, .068(b). TxDOT is authorized to regulate "the orderly and effective display of commercial signs consistent with the customary use of commercial signs in this state." *Id*. § 391.032. Particularly relevant to this case, TxDOT is authorized to prescribe by rule "the time for and manner of applying for a permit." *Id*. § 391.068(b)(2).

TxDOT's rules are contained in chapter 21, subchapter I, of title 43, Texas Administrative Code. *See* 43 Tex. Admin. Code §§ 21.141–.204 (2017). A permit is eligible for renewal if it continues to meet all applicable requirements in the Texas Transportation Code and the Texas Administrative Code. *Id*. § 21.172(b). A permit must be renewed annually. *Id*. § 21.172(a). To renew a permit, the permit holder must file the application and pay permit fees "before the 46th day after the date of the permit's expiration." *Id*. § 21.172(c). Notwithstanding these provisions, a permit for a nonconforming sign is limited by the requirements of § 21.150 which contains a proviso that restrains the renewal of a permit for a nonconforming sign unless the structure involved was lawful on the date it was erected or became

3

subject to TxDOT control, and the structure remains substantially the same. *Id.* 21.150(a)

*Factual Background*

The dispute in this case arises from three signs Lamar owns in Harrison County and the permits Lamar held for those signs. Each of the signs were nonconforming signs at the time the permits were first issued to their previous owners because each sign was not within 800 feet of a commercial or industrial area as required by TxDOT's rules.[2]

On October 7, 2016, TxDOT officials sent Lamar three letters requesting the removal of the three signs based on the expiration of the permits associated with the signs, ("removal orders"). Each of the removal orders states:

> Our records indicate that the above referenced permit expired October 16, 2011. Therefore, the sign is being maintained in violation of Chapter 391.031 of the Texas Transportation Code for the following reason:
>
> > 43 TAC §21.198(a) If a sign permit expires without renewal or is canceled or if the sign is erected or maintained in violation of this division, the owner of the sign, on a written demand by the department, shall remove the sign at no cost to the state.

The removal orders required Lamar to remove each "sign and its structure, at no cost to the State, within 45 days of receipt of this letter."

On November 22, 2016, Lamar informed TxDOT that it never received

---

[2] Permit No. 62 was issued on November 16, 1972 to Stuckey's Pecan Shoppe, for a sign erected in 1966 located along I-20 outside the city limits of Waskom, Texas. Permit No. 142 was issued on February 21, 1973 to B & B Outdoor Advertising, Inc. for a sign erected in 1948 located along U.S. 80 outside the city limits of Waskom, Texas. Permit No. 7714 was issued on April 10, 1973 to Metrocom, Inc. for a sign erected in 1969 located along I-20 outside the city limits of Marshall, Texas.

renewal notices, and tendered payment to TxDOT for period since the 2011 expiration, and requested that TxDOT rescind the removal orders.

On February 23, 2017, TxDOT's associate attorney general responded with three follow-up letters. The follow-up letters refer Lamar to its rule requiring permit holders to annually renew. The letters acknowledge that its rules require "[TxDOT] to provide notice of the impending renewal", but states "[TxDOT] records indicate that the letters were sent." The letters state that "even assuming *arguendo* that [the renewal notice letters] had not been sent, the requirements of § 21.172(a) and (c) are not contingent upon having received that notice."

*Procedural Background*

On April 13, 2017, Lamar filed suit against TxDOT and its officials alleging *ultra vires*, rules challenges, attorneys' fees, and alternatively, inverse condemnation claims. TxDOT and its officials answered the suit and, on September 13, 2017, filed a motion to dismiss for want of jurisdiction and motion for summary judgment, and set the motions for hearing on October 30, 2017.[3]

On October 10, 2017, before any response was filed, the parties agreed to and requested a stay of proceedings pending a final decision by the Texas Supreme Court in *Auspro Enterprises, LP v. Texas Department of Transportation*, 506 S.W.3d 688 (Tex. App.—Austin 2016, pet. granted, judgm't vacated, mandate issued on April 23, 2018). After the case resumed, Lamar amended its petition to include a claim for money damages under 42 U.S.C. § 1983. In this live pleading, Lamar principally seeks a declaratory judgment, seeking declarations that:

> (1) it "is entitled to renew the Permits pursuant to 43 Texas Administrative Code § 21.150;"

---

[3] The motion contained 6-page affidavit of a TxDOT official with 17 exhibits totaling (70 pages pages).

(2) "43 Texas Administrative Code § 21.172 requires notice to the license holder at least thirty days before the date of the permit expiration and not later than thirty days after the date of expiration before an effective order of removal can be issued under 43 Texas Administrative Code § 21.198;"

(3) "TxDOT officials violated Lamar's procedural due process rights by sending the Orders without first giving Lamar the required notice of renewal and opportunity to bring the Permits current before ordering removal of the signs;" and

(4) "the permit renewal provisions of 43 Texas Administrative Code §§ 21.150 and 21.172 are unconstitutionally vague."

Lamar attached three exhibits to its petition: a copy of the original permits, a copy of the October 7, 2016 removal letters, and a copy of the associate attorney general's February 23, 2017 follow-up letter.

TxDOT and its officials filed an amended motion to dismiss for want of jurisdiction addressing all of Lamar's claims, without attaching evidence. Lamar filed a response. On March 5, 2020, trial court held a hearing on the amended motion to dismiss.[4] On March 29, 2020, the trial court signed an order dismissing with prejudice Lamar's suit for want of jurisdiction, which Lamar now appeals.

## II. MOTION TO DISMISS FOR WANT OF JURISDICTION

We review the trial court's order dismissing Lamar's declaratory action on the TxDOT parties' motion to dismiss for want of jurisdiction.

**Standard of Review**

An assertion that sovereign immunity from suit deprives a trial court of subject-matter jurisdiction over a claim may be raised through a plea to the jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217,

---

[4] At the hearing the attorneys for both sides referenced exhibits attached to TxDOTs original motion, as well as an agreement to not refer to those exhibits, and the court stated that it would not consider the evidence.

225-26 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Here, the TxDOT challenges jurisdiction based on sovereign immunity, a question of law we review de novo. *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011).

In assessing a plea to the jurisdiction, our analysis begins with the live pleadings. *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). The plaintiff has the burden of alleging facts sufficient to demonstrate the trial court's jurisdiction. *Miranda,* 133 S.W.3d at 226. We construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent. *See id.* at 226-27.  If the pleadings illustrate incurable defects in jurisdiction, a plea to the jurisdiction is properly granted. *Id.* at 226–27. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *See Miranda*, 133 S.W.3d at 226-27.  We may consider evidence submitted to negate the existence of jurisdiction, *id.*, and consider evidence that the pleader has attached to its petition or submitted in opposition to the plea. *See Bland,* 34 S.W.3d at 555.  If jurisdiction is affirmatively negated, a plea to the jurisdiction must be granted. *See Miranda*, 133 S.W.3d at 226-27.

## A. *Ultra vires*

Lamar first argues that the trial court erred in granting the TxDOT officials' plea to the jurisdiction in light of what Lamar contends were facially-valid *ultra vires* claims.  Lamar contends that it satisfied its jurisdictional-pleading burden in these three respects: first, by alleging that Bass and Cannon acted without legal authority (or failed to perform a purely ministerial act) by issuing the orders to remove the signs in violation 43 Texas Administrative Code § 21.150, second by

7

alleging that Bass and Cannon acted without legal authority (or failed to perform the alleged ministerial acts) by failing to send renewal notices required by 43 Texas Administrative Code § 21.172, and third, by alleging that Bass and Cannon's acts deprived Lamar of its vested property rights without affording Lamar due process under the Texas Constitution.

The illegal or unauthorized acts of a state official are not considered acts of the State and, therefore, an action against a State official complaining that the official acted without legal authority or failed to perform a purely ministerial act is permitted under the *ultra vires* exception to sovereign immunity. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370-72 (Tex. 2009); *see also Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). The basic justification for the *ultra vires* exception to sovereign immunity is that *ultra vires* acts—or those acts without authority— should not be considered acts of the state at all. Consequently, *ultra vires* suits do not attempt to exert control over the state; instead, they attempt to reassert the control of the state over one or more of its agents. *Hall*, 508 S.W.3d at 238.

To determine if a party has asserted valid *ultra vires* claims, the courts construe the relevant statutory provisions, apply them to the facts alleged, and determine whether those facts constitute acts beyond the official's authority or establish the failure to perform a purely ministerial act. *Machete's Chop Shop, Inc. v. Tex. Film Comm'n*, 483 S.W.3d 272, 278 (Tex. App.—Austin 2016, no pet.).

The relevant statutes require a permit for commercial signs. Tex. Transp. Code § 391.067. The legislature has granted TxDOT the authority to regulate by rule "the orderly and effective display of commercial signs," *id*. § 391.032, and to regulate by rule the issuance of commercial sign permits, *id*. § 391.065. TxDOT is also authorized to prescribe by rule (1) reasonable permit fees; (2) the "time for and manner of applying for a permit;" and (3) the "form and content of the permit

8

application." *Id.* § 391.068(b). Further, TxDOT is authorized to determine compliance with relevant statutes and rules regarding permitting. *Id.* § 391.068(a).

Both TxDOT and its officials have authority to determine whether permit applications meet the regulatory and statutory requirements. *Reagan Nat'l Advert. of Austin, Inc. v. Bass*, No. 03-16-00320-CV, 2017 WL 4348181, at *3 (Tex. App.—Austin Sept. 27, 2017, no pet.) (mem. op.); *KEM Tex., Ltd. v. Tex. Dep't of Transp.*, No. 03-08-00468-CV, 2009 WL 1811102, at *5 (Tex. App.—Austin June 26, 2009, no pet.) (mem. op.). The statutes referred to above implicitly grant both TxDOT and its officials' authority to interpret the rules and statutes it must administer and enforce. *See Reagan*, 2017 WL 4348181, at *3; *see also KEM*, 2009 WL 1811102, at *5. Therefore, in a case such as this, to act *ultra vires* based on the interpretation and application of the law, TxDOT's officials would have to act "without reference to or in conflict with the constraints of the *law authorizing [them] to act*." *See Hall*, 508 S.W.3d at 242. Under these circumstances, a mistake by an official in granting or denying a permit, or a mistake in interpreting its own rules does not mean that the agency officials are acting without authority in implementing that interpretation. *Reagan*, 2017 WL 4348181, at *4.

Lamar alleged that Bass and Cannon acted without lawful authority by ordering the removal of the signs because the Department's *regulations* do not provide discretion to its officials to refuse renew Lamar's Permits. Lamar also argues that Bass and Cannon failed to perform the ministerial act of sending renewal notices pursuant to 43 Texas Administrative Code § 21.172. Because they failed to send renewal notices, Lamar argues that TxDOT's officers deprived Lamar of a constitutionally protected property interest without due process. *See Arndt v. Pinard Home Health, Inc.*, 495 S.W.3d 57, 59 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (*ultra vires* suits brought to require state officials to comply

with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to that effect compels the payment of money).

Lamar essentially alleges that TxDOT officials interpreted the rules incorrectly when more than four years after Lamar last paid for its annual permits TxDOT officials determined the annual permits expired without the thirty-day renewal notice or late renewal notice. Lamar makes no allegations that Bass and Cannon acted in conflict with the relevant statutes in chapter 391 of the Transportation Code that authorize TxDOT's officials to act. Instead, Lamar alleges TxDOT and its officials failed to follow TxDOT's internal rules. Such violations alone cannot constitute *ultra vires* acts. *See Alphonso Crutch Life Support Ctr. v. Williams*, No. 03-13-00789-CV, 2015 WL 7950713, at *8–9 (Tex. App.—Austin Nov. 30, 2015, pet. denied) (mem. op.) (dismissing *ultra vires* claim based on allegations that officials violated their own rules in reaching a decision). Lamar's allegations are complaints that TxDOT made errors in applying its own rules.

It is not an *ultra vires* act for officials to make mistakes or to make erroneous decisions while staying within their authority. *Honors Acad., Inc.*, 555 S.W.3d at 68; *Hall*, 508 S.W.3d at 242; *Reagan*, 2017 WL 4348181, at *4; *Creedmoor-Maha Water Supply*, 307 S.W.3d at 517–18. Nor does a failure to provide notice or otherwise comply with procedures constitute an *ultra vires* act where officials are not acting wholly outside their authority. *Pharmserv, Inc. v. Tex. Health & Human Servs. Comm'n*, No. 03-13-00526-CV, 2015 WL 1612006, at *7 (Tex. App.—Austin Apr. 9, 2015, no pet.) (mem. op.) (citing *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 528 (Tex. App.—Austin 2002, pet. denied)); *Merritt v. Cannon*, No. 03-10-00125-CV, 2010 WL 3377778, at *3 (Tex. App.—Austin Aug. 27, 2010, pet. denied) (mem. op.)

10

(holding where TxDOT is authorized to administer and enforce the regulation and permitting of commercial signs on rural roads it has the discretion to determine if a sign falls within statutory definitions).  Though TxDOT rules provide for notice of sign-permit expiration for license-holders at specified times before and after the expiration of a permit, the failure to provide that notice alone does not constitute an act wholly outside their authority or a failure to perform a statutorily imposed ministerial duty.  *See Pharmserv, Inc.*, 2015 WL 1612006, at \*7; *see also Merritt v. Cannon*, 2010 WL 3377778, at \*3.

Lamar's *ultra vires* due process complaint also fails.  To assert a valid due process claim, a party must have a constitutionally protected liberty or property interest. *Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 15 (Tex. 2015). The expectation of a permit does not give rise to a property interest. *Shrieve v. Tex. Parks & Wildlife Dep't*, No. 03-04-00640-CV, 2005 WL 1034086, at \*5 (Tex. App.—Austin May 5, 2005, no pet.). Yet, other than by reference to its expectation of the permit, Lamar has not alleged how the sign permit is a vested property right. *See Klumb*, 458 S.W.3d at 157; *see also KEM*, 2009 WL 1811102, at \*6.

Because Lamar failed to allege a valid *ultra vires* claim, we overrule Lamar's contention that the trial court should have denied Bass's and Cannon's motion to dismiss for lack of jurisdiction on ground that Lamar had asserted valid *ultra vires* claims.

## B. Administrative Procedures Act

Lamar also contends that the trial court erred in granting TxDOT's plea to the jurisdiction for claims against TxDOT brought under the APA, challenging the applicability, validity, and constitutionality of Department's administrative rules.

The APA waives governmental immunity for a suit challenging "[t]he

validity or applicability of a rule" when the rule or its threatened application will interfere with, impair, or threaten to interfere with or impair a legal right or privilege. Tex. Gov't Code § 2001.038(a); *LMV-AL Ventures, LLC v. Tex. Dep't of Aging & Disability Services*, 520 S.W.3d 113, 122 (Tex. App.—Austin 2017, pet. denied). Lamar alleged both validity and applicability challenges in its petition. We address these separately.

### 1. *Validity Challenge*

As a state administrative agency, TxDOT has only those powers that the Texas Legislature has expressly conferred upon it and those implied powers that are reasonably necessary to carry out its statutory duties. *Public Util. Comm'n of Tex. v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 315 (Tex. 2001). As such, it can adopt "only such rules as are authorized by and consistent with its statutory authority." *R.R. Com'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992) (quoting *State Bd. of Ins. v. Deffebach*, 631 S.W.2d 794, 798 (Tex. App.–Austin 1982, writ ref'd n.r.e.)). Courts generally presume that agency rules are valid, so parties who challenge a rule have the burden of proving its invalidity. *See Tex. State Bd. of Examiners of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017). To meet its burden, the challenging party must show that the rule's provisions are not "in harmony with the general objectives of the act involved." *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 750 (Tex. 1995) (citing *Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex. 1968)). We discern those "general objectives" from the plain text of the statutes that grant or limit the agency's authority. *Pruett v. Harris Cty. Bail Bond Bd.*, 249 S.W.3d 447, 454 (Tex. 2008); *Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999).

*Generally*, the objecting party must show that the rule: (1) contravenes

specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *Tex. State Bd. of Examiners of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33–34 (Tex. 2017). Taking a more nuanced approach, Lamar challenges the validity of two regulatory provisions promulgated by TxDOT, sections 21.150 and 21.172 of Chapter 43 of the Texas Administrative Code, on the alternative basis that they are both unconstitutionally vague.

Statutes and rules are presumed to be constitutional. *Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 55 (Tex. 2014); *Vista Healthcare, Inc.*, 324 S.W.3d at 273; *Zaborac*, 168 S.W.3d at 225. The party challenging the constitutionality of a statute or rule has the burden to demonstrate constitutional requirements are not met. *Union Carbide Corp.*, 438 S.W.3d at 55; *Vista Healthcare, Inc.*, 324 S.W.3d at 273. In reviewing a business regulation for vagueness, the principal inquiry is whether the law affords *fair warning* of what is prohibited. *Vill. of Hoffman Estates*, 455 U.S. at 503.

### Section 21.172, Permit Renewals

(a) To be continued in effect, a sign permit must be renewed annually.

(b) A permit is eligible for renewal if the sign for which it was issued continues to meet all applicable requirements of this division and Transportation Code, Chapter 391.

(c) To renew the permit, the permit holder must *file* with the department a written application in a form prescribed by the department accompanied by the applicable fees prescribed by § 21.175 of this division (relating to Permit Fees). The application with all applicable fees must be *received* by the department before the 46th day after the date of the permit's expiration.

(d) A permit may not be renewed if the sign for which it was issued is not erected to the extent that it includes a sign face before the first anniversary of the date that the permit was issued.

(e) The department will *provide* a renewal notification to the license holder at least 30 days before the date of the permit expiration. If the permit is not renewed before it expires, not later than 30 days after the date of expiration the department will provide notification to the license holder of the opportunity to file a late renewal with all applicable fees.

43 Tex. Admin. Code § 21.172 (2017) (Subsections (f) – (h) omitted).

Lamar argues that when subsections (a), (c), and (e) of section 21.172 are read together, they make the rule unconstitutionally vague. Lamar argues that a person of ordinary prudence reasonably could interpret the plain language of 21.172 to mean either: (i) that a renewal application is timely if submitted before the 46th day after the date of the permit's expiration on the one-year anniversary of the permit's issuance, and thus the "late renewal" opportunity that must be afforded to the sign owner under subsection (e) must allow for renewal after the 46th day following expiration of the permit as to be set forth in the required notice of the opportunity to late renew; or (ii) that a renewal application is timely only if submitted by the permit's expiration date and the "late renewal" opportunity under subsection (e) means renewal within 45 days after expiration. Lamar contends the statute is vague because the rule is unclear on its face what "late renewal" means and because the term is not defined, thus leave it unclear whether it means within 45 days after the permit's expiration, or after the 46th day after the permit's expiration.

We disagree. First, a rule is not unconstitutionally vague just because it does not define words or terms. *Canales*, 2020 WL 5884123, at \*4; *Vista Healthcare, Inc.*, 324 S.W.3d at 273; *Zaborac*, 168 S.W.3d at 225; *Rooms With a View, Inc.*, 7 S.W.3d at 845. "If an undefined term has multiple common meanings, it is not necessarily ambiguous or vague; rather, courts apply the definition most consistent with the context of the statutory scheme." *Canales*, 2020 WL 5884123, at \*4. In

light of the plain meaning of the terms of the statute, the context of the use of the phrase "late renewal", lead us to conclude that "late renewal" means renewal during the 45-day grace period beginning with permit's expiration date, the anniversary of the permit's last issuance, and ending the day "the application with all applicable fees must be *received* by the department." Subsection (a) indicates that a permit ceases to "be continued in effect" or is discontinued on the expiration date.

Section 21.175, which is part of the same subchapter as § 21.172 and was adopted on the same date, states the permit fees are required for renewal of a permit. The late fee charged for a late renewal specifically applies to "renewal of a permit that is received before the 46th day after the permit expiration date." 43 Tex. Admin. Code § 21.175(c) (2017). There is no fee provision for renewals received after the 45th day after the permit expiration date. *See id*. § 21.175.

The rule also sets out that TxDOT will provide notice of expiration and notice of late renewal, but as the rule is written, the notice provision is not explicitly connected the permit holder's renewal obligations.

We conclude that the challenged version of section 21.175 affords fair warning that TxDOT prohibits renewal upon party's failure to satisfy the permit-renewal requirements provided in subsection (c) any later than the 45th day after the anniversary of the permit's issuance. *See Vill. of Hoffman Estates*, 455 U.S. at 503. Therefore, Lamar has not met its burden in its validity challenge to section 21.175, as it has not demonstrated that any constitutional requirements have not been met. *See Vista Healthcare, Inc*., 324 S.W.3d at 273-275.

### Section 21.150, Continuance of Nonconforming Signs

(a) *Notwithstanding other provisions of this division*, the department will renew a permit for a nonconforming sign only if the sign

15

structure:

> (1) was lawful on the later of the date it was erected or became subject to the control of the department; and

> (2) remains substantially the same as it was on the later of the date it was erected, became subject to the department's control, or became a nonconforming sign.

(c) A nonconforming sign may not be:

> (1) removed and re-erected for any reason, other than a request by a condemning authority; or

> (2) substantially changed, as described by § 21.191 of this division (relating to Repair and Maintenance).

43 Tex. Admin. Code § 21.150 (2017) (subsections (b) and (d) omitted).

Lamar argues that Section 21.150, is unconstitutionally vague because, as Lamar interprets the provision, the word "*notwithstanding*" given its dictionary meaning "in spite of" or "despite" effectively excludes all other renewal requirements "set out in other provisions in this division". Without veering from Lamar's selected dictionary definition, we still disagree. The plain and ordinary meaning of the text suggest that "Notwithstanding other provisions of this division" unambiguously means that despite a party's satisfaction of the other renewal provisions of this division, the department will still not renew a permit for a nonconforming sign unless the sign structure. . . also satisfies (a)(1) and (2). Only this construction allows TxDOT's rules to be read as a whole giving meaning to language consistent with its other provisions. *See Vista Healthcare, Inc.*, 324 S.W.3d at 272. Nothing in section 21.172 suggest that "nonconforming" signs-status relieved a sign-owner of that section's requirements for filing renewal applications and paying prescribed fees within the requisite time periods in order to renew permits for its nonconforming signs. *See In re M.W.M., Jr.*, 523 S.W.3d at 207; *E. Hous. Estate Apartments, L.L.C.*, 294 S.W.3d at 734. Therefore, Lamar

has also not met its burden with respect to its validity challenge to section 21.150.

## 2. *Applicability Challenges*

Section 21.198 authorizes TxDOT to issue a removal order "[i]f a sign permit expires without renewal or is canceled or if the sign is erected or maintained in violation of this division." 43 Tex. Admin. Code § 21.198 (2017). Lamar contends that it alleged a "valid claim under the APA pursuant to Texas Government Code § 2001.038 against [TxDOT] because § 21.198 cannot be applied to Lamar's permits and signs, thereunder."

Section 2001.038 waives sovereign immunity for a declaratory judgment action to determine the applicability of a rule. Tex. Gov't Code § 2001.038. The Austin Court of Appeals recently made clear in the context of a rule-challenge that a determination of the applicability of a rule is not the same thing as a determination how a rule applies to a set of facts. *See LMV-AL Ventures, LLC*, 520 S.W.3d at 122-125. "A rule 'applicability' challenge authorized by § 2001.038 is limited to determining whether a rule is capable of being applied to or is relevant to a factual situation, as distinguished from a challenge to the rule's application (i.e., 'how the rule should be applied' to particular facts or 'the specific outcome after a rule's application.')." *Tex. Alcoholic Beverage Comm'n*, 2017 WL 2333272, at *2 (quoting *LMV-AL Ventures, LLC*, 520 S.W.3d at 122–25). Section 2001.0038 does not confer jurisdiction over the courts to determine whether an agency has complied with a rule or how a rule should be applied. *See LMV-AL Ventures, LLC*, 520 S.W.3d at 124– 25; *Alphonso Crutch Life Support Ctr.*, 2015 WL 7950713, at *10; *Friends of Canyon Lake, Inc.*, 96 S.W.3d at 529.

Lamar's APA applicability challenge to TxDOT's rules sought a declaration that orders of removal cannot be issued under § 21.198 because TxDOT's rule § 21.172 first requires notice be sent to the license holder at least 30 days before the

date of the permit expiration and also 30 days after the date of expiration to allow the sign owner an opportunity to cure and submit any late renewal fees due to TxDOT at that time.

In *LMV-AL Ventures, LLC*, LMV, the owner of a memory care facility, sought a declaratory judgment under the APA, for declarations that would compel Texas Department of Aging and Disability Services ("DADS") to license thirty rooms in LMV's recently constructed memory care facility for double occupancy use. *LMV-AL Ventures, LLC*, 520 S.W.3d at 117. LMV asserted a 2001.038 rule-applicability challenging concerning 42 Tex. Admin. Code 92.62 ("Rule 92.62") which governs the size of the bedrooms in facilities like the one LMV had recently constructed. *Id*. Rule 92.62 provides that for facilities like the LMV facility, the useable floor space must not be less than 100 square feet per bed for a single-bed room and not less than 80 square feet per bed for a multiple-bed room. *Id*. Rule 92.62 also stated that a bedroom must be not be less than 10 feet in the smallest dimension. *Id*. The case involved permits sought by LMV for 30 rooms of similar size and design for double-occupancy use. Although the rooms exceeded 160 square feet in total, based on the unique dimensions of the room (including a 7-foot long, 5-foot wide doorway entrance and unfortunate placement of vertical HVAC unit), the DADS refused to approve the rooms for anything other than single occupancy. *Id.* at 118. After a thorough discussion of the difference between determining a rule's application versus its applicability, the court concluded LMV had not asserted a proper APA challenge because LMV sought a declaration of *how* Rule 92.62 should be applied to its facility, not *whether* the rule applied to the facility. *Id.* at 125.

In the instant case, Lamar sought a declaration that construes § 21.172 to require TxDOT provide the notice described under subsection (e) (to the license

18

holder at least 30 days before the date of the permit expiration and not later than 30 days after the date of expiration to allow the sign owner an opportunity to cure) as a condition precedent to TxDOT authority to issue orders of removal under §21.198. Lamar is not asking the court to determine whether section 21.198 (pertaining to orders of removal) applies, but instead seeks a judicial determination construing how the rule should be applied. Such a question is not within the trial court's jurisdiction under section 2001.038. *LMV-AL Ventures, LLC*, 520 S.W.3d at 125.

Accordingly, because Lamar has not alleged any validity or applicability challenges under the APA to waive sovereign immunity, we overrule its challenge that the trial court erred in granting TxDOT's motion to dismiss on such grounds.

## C. Inverse Condemnation

Lamar also contends that the trial court erred in granting TxDOT's plea to the jurisdiction with respect to its inverse condemnation claims.

The Texas Constitution waives sovereign immunity from suit for an inverse condemnation claim under article I, section 17, of the Texas Constitution. *Sw. Bell Tel., L.P. v. Harris County*, 267 S.W.3d 490, 497 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Nat'l Media Corp. v. City of Austin*, No. 03-16-00839-CV, 2018 WL 1440454, at *4 (Tex. App.—Austin Mar. 23, 2018, no pet.). To recover on an inverse condemnation claim, a party must establish (1) the State or other governmental entity intentionally performed certain acts, (2) that resulted in a "taking" of property, (3) for public use. *Id.* at 495. Further, a party is required to show it has a compensable interest in the property at issue. *Brownlow v. State*, 251 S.W.3d 756, 760 (Tex. App.—Houston [14th Dist.] 2008), *aff'd*, 319 S.W.3d 649 (Tex. 2010). This latter requirement is where our analysis begins and ends.

Since the 1972 enactment of the Texas Highway Beautification Act, the right to erect or maintain outdoor advertising at the three Harrison County locations at issue have been made contingent upon its obtaining advertising licenses and permits under the Act. Lamar alleged no facts indicating it owned the signs at the time the legislation was enacted; the evidence attached to its pleading indicated the converse fact and showed that the signs under previous owners had been effectively grandfathered into compliance with the Highway Beautification Act through nonconforming sign permits. *See KEM Tex., Ltd. v. Tex. Dep't of Transp.*, No. 03-08-00468-CV, 2009 WL 1811102, at *6 (Tex. App.—Austin June 26, 2009, no pet.) ("KEM has not alleged that it purchased its billboard easement prior to the Act's effective date. Consequently, we need go no further than to hold that KEM's rights under its billboard easement are not vested rights implicating due process, but are merely expectations of a potential and contingent interest.").

In a case germane to our analysis from the Austin Court of Appeals, an advertiser, National Media was denied registration of its sign as a nonconforming sign, and was sent a notice of violation. *Nat'l Media*, 2018 WL 1440454, at *1. National Media alleged that the denial of a registration permit constituted a per se taking of a vested property right and that the City's illegal application and enforcement of the zoning code constituted a total regulatory taking of its property interest in its sign and unreasonably interfered with its use and enjoyment of its property. *Id*. at *4. The Court of Appeals concluded that National Media's allegations that the City had improperly applied the zoning code to deny sign registration and foreclose a relocation permit was not a viable regulatory taking under any recognized theory. *Id*. at *5. The Court recognized that the City had the discretion to determine whether the sign was entitled to grandfather status and relocation, and stated that "[t]he City's failure to exercise its discretion in the

20

manner in which National Media favors does not equate to a regulatory taking of vested property rights or the revocation of such vested rights." The Austin Court of Appeals reversed the district court's denial of the City's plea to the jurisdiction and dismissed all of National Media's claims on jurisdictional grounds.

Like National Media, Lamar has not alleged a vested compensable property interest in the signs at the time of the alleged taking, which in this instance was the time TxDOT issued its removal orders. *Nat'l Media*, 2018 WL 1440454, at *4. Rather, despite Lamar's characterization of its permits as unexpired, it alleged facts that it had failed to renew those permits in the three signs during a four-year period. Lamar's allegations that TxDOT's failed to exercise discretion favorably toward Lamar with respect to the expiration of these permits or their renewal does not equate to a regulatory taking or inverse condemnation of a vested rights. *See id*.

Because Lamar did not allege a viable taking, TxDOT retained its immunity from suit, and dismissal on TxDOT's jurisdictional challenge was proper.

## III. CONCLUSION

Having considered and overruled each of Lamar's challenges to the trial court's order on the first amended motion to dismiss for want of jurisdiction filed by TxDOT and its officials, we affirm the order of dismissal for want of jurisdiction.

/s/     Randy Wilson
          Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.